UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JONATHAN ORELLANO,     :
  Plaintiff,       :
             :
  v.          :  Case No. 3:20-cv-00480  (VLB)
             :
DANIEL PAPOOSHA, et al.,    :
  Defendants.      :

## INITIAL REVIEW ORDER

On April 9, 2020, Plaintiff Jonathan Orellano, currently in the custody of the State of Connecticut Department of Correction ("DOC"), brought a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against several DOC officials in their official and individual capacities:  Bridgeport Correctional Center ("BCC") Lieutenant Daniel Papoosha, BCC Warden Alison Black, BCC Warden Butricks, BCC Lieutenant and Disciplinary Hearing Officer Eberle, BCC Corrections Officer White, Corrigan-Radgowski Correctional Center ("Corrigan") Warden Faucher, Corrigan Warden Corcella, Security Risk Group ("SRG") Coordinator John Aldi, former Director of Security Christine Whidden, Director of Security Antonio Santiago, Commissioner Scott Semple, Director of Offender Classification and Population Management David Maiga, and District Administrator Edward Maldonado.  [ECF No. 1 (Compl.)].

After his case was closed for failure to correct his motion to proceed *in forma pauperis* or to pay the fee, Plaintiff filed a motion to reopen the case and

filed an amended complaint.  *See* [ECF Nos. 9, 17].  The Court granted Plaintiff's motion to reopen the case.  *See* [ECF No. 22].

Plaintiff's Amended Complaint alleged violation of his rights as a pretrial detainee under the United States Constitution, the Religious Freedom Restoration Act ("RFRA") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Lieutenant Papoosha, Warden Butricks, Lieutenant Eberle, Corrections Officer White, Warden Faucher, Warden Corcella, SRG Coordinator Aldi, former Director Whidden, Director Santiago, Commissioner Semple, Commissioner Rollin Cook, Director Maiga, and District Administrator Maldonado in their individual and official capacities. [1]  [ECF No. 17].

On initial review, the Court applied the Fourteenth Amendment as it considered Plaintiff to be a pretrial detainee during his confinements in 2017 and after October 2018.  [ECF No. 23 at 20-30].  The Court permitted the following individual capacity claims to proceed: Plaintiff's procedural due process claim against Maiga in his individual capacity based on the 2018 SRG designation/placement decision; his procedural due process claims against Corcella and Maldonado based on the lack of periodic review for his SRG placement/classification; and his substantive due process claims against Corcella, Maldonado, Maiga, Santiago, and Papoosha based on his allegedly

---

[1] **Plaintiff alleged that he is a pretrial detainee who had been housed at BCC, MacDougall-Walker Correctional Institution, and Corrigan-Radgowski Correctional Center ("Corrigan").  [ECF No. 34 ¶ 3].**

punitive confinements in the SRG Program in 2017, BCC administrative detention, and Corrigan SRG Program.  *See Id.* at 19, 22-25, 31.  The Court dismissed Plaintiff's Fifth Amendment, Fourteenth Amendment indifference claims, his First Amendment retaliation claims, and his First Amendment free exercise, RLUIPA and RFRA claims.  *Id.*  The Court afforded Plaintiff the opportunity to file an amended complaint to allege facts to correct the deficiencies identified in the initial review order.  *Id.*

On January 8, 2021, Plaintiff filed a motion for leave to amend his complaint indicating that he wanted to amend his First Amendment free exercise, RLUIPA, and RFRA allegations.  [ECF No. 29].  The Court granted his motion and advised him that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.  [ECF No. 30].

Plaintiff has now filed his amended complaint alleging claims of First and Fourteenth Amendment violation, RFRA and RLUIPA violation, and state law claims of negligence and intentional infliction of emotional distress against Lieutenant Papoosha, Security Director Santiago, Director of Offender Classification Maiga, District Administrator Maldonado, and Corrigan Warden Corcella in their individual and official capacities.  [ECF No. 34].  The Court notes that Defendants have already answered this amended complaint.  [ECF No. 36].

The Court conducts an initial review of Plaintiff's amended complaint.

3

## I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, this court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford Defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## II. ALLEGATIONS

Plaintiff alleges that he was a pretrial detainee incarcerated at BCC, MacDougall-Walker Correctional Institution ("MacDougall"), and Corrigan at all times relevant to this complaint. [ECF No. 34 ¶ 3]. He is currently incarcerated at BCC. *Id.*

4

In March 2016, Plaintiff was affiliated as a member of the Crips during his incarceration within DOC; he was sent to Phase 2 of the Security Risk Group ("SRG") Program. *Id.* ¶ 11. In October 2016, Plaintiff completed his prison sentence and was released on a three-year Special Parole. *Id.* ¶ 12.

In May 2017, Plaintiff violated the conditions of parole by placing gang-related posts on his Facebook page. *Id.* ¶ 13. Plaintiff was put into segregation for the Facebook posts and confined to the SRG unit as a pretrial detainee without violation of a facility rule. *Id.* ¶ 14. Plaintiff was sent back to Phase 2 of the SRG Program; and in November 2017, he completed six months of the SRG Program while detained for his Parole violation. *Id.* ¶ 15.

In October 2018, Plaintiff was reincarcerated on new charges. *Id.* ¶ 16. He was placed in segregation when he returned to prison in 2018 at a supermax facility, because Plaintiff had not finished his SRG time during his last incarceration; he alleges his placement was without legitimate penological justification. *Id.* ¶¶ 17, 18.

In November 2018, Plaintiff was transferred to Corrigan in the Phase 3 SRG Program. *Id.* ¶ 20. Plaintiff did not receive any review of his placement to determine if he posed a threat to safety and security. *Id.* ¶ 21.

Defendant Maldonado denied all of Plaintiff's appeals despite the violations of his rights as a pretrial detainee. *Id.* ¶¶ 23-24.

Plaintiff's unlimited and indefinite SRG confinement has subjected him to psychological, emotional, and physical suffering and distress. *Id.* ¶ 19.

Plaintiff alleges the following conditions of the SRG Program at Corrigan. Plaintiff was not permitted to receive "good time" credit, and was not eligible for parole, a halfway house placement or other reentry programs. *Id.* ¶ 25. Any social contact through the door was strictly prohibited, and Plaintiff received only one hour of recreation per day while the other 23 hours of the day were spent in his cell. *Id.* ¶¶ 26-27. Plaintiff had only one hour of vigorous exercise a week. *Id.* ¶ 28. Plaintiff could purchase only $40 from the commissary, while the general population can purchase $75, or $150 on the holidays. *Id.* ¶ 29. Plaintiff was permitted three phone calls a week, while six calls are allowed in the general population; he had to use a toothbrush the size of a pinkie to brush his teeth as opposed to the regular size tooth brush permitted in the general population; had to use a flex pen the size of his index finger to write instead of a Bic pen provided to the general population; could receive only visits from his immediate family, while the general population inmates can receive visits from anyone; had to eat his breakfast, lunch and dinner in the cell next to a toilet shared with a cellmate; and had no access to a toilet brush to clean the interior of the toilet. *Id.* ¶¶ 29-35. Plaintiff did not have access to hot water to warm up his food, while the general population inmates can order hot pots to warm and cook their food. *Id.* ¶ 36. Plaintiff was not allowed to receive food or cosmetics from another inmate or give

such items to another inmate, while general population inmates can bring anything out of their cells.  *Id.* ¶ 37.

Plaintiff was unable to practice his religion or to participate in correctional programming.  Plaintiff had no access to religious services for his Catholic faith, while the general population has access to Catholic services at least twice a week.  *Id.* ¶ 38.  Plaintiff alleges inability to attend Mass service was a burden to his religious beliefs.  *Id.*  There were no religious services held while Plaintiff was in the SRG Program, no educational programming, and no access to the library. *Id.*  There are absolutely no programs to help the inmates better themselves in all SRG Program phases.  *Id.* ¶ 41.

Plaintiff was not allowed to wear thermal pants or sweatpants under his jumper regardless of the temperatures outside, while the general population inmates are permitted to wear these clothes.  *Id.* ¶ 39.  Plaintiff was forced to live with inmates who have a rival affiliation, although inmates have died due to conflicts among SRG members.  *Id.* ¶ 40.  These measures are all allegedly punitive in nature.  *Id.* ¶ 42.

### III. DISCUSSION

In his most recent amended complaint, Plaintiff alleges constitutional violations of his rights under the First and Fourteenth Amendments, and RFRA

and RLUIPA.[2]   He also alleges state law claims of negligence and intentional infliction of emotional distress.

The standards applicable to Plaintiff's claims concerning procedural due process violation or unconstitutional conditions of confinement depend on whether he is considered a pretrial detainee or a sentenced inmate.  *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 n.9 (2d Cir. 2017) (conditions of confinement claims of pretrial detainees are considered under the Due Process Clause of the Fourteenth Amendment, but such claims brought by a sentenced prisoner are considered under the Eighth Amendment); *Eckert v. Grady*, No. 3:19-cv-00982 (VAB), 2020 WL 3129478, at *8 (D. Conn. June 12, 2020) (pretrial detainee need not prove that the conditions under which he was confined exposed him to atypical and significant hardships in order to demonstrate a liberty interest requiring procedural due process protection) (citing *Benjamin v. Fraser*, 264 F.3d 175, 188–89 (2d Cir. 2001)).  As Plaintiff has alleged that he was a pretrial detainee at all times relevant to this action, the Court will apply the more lenient standards of the Fourteenth Amendment for purposes of initial review only.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v.*

---

[2] **Plaintiff does not allege a claim of First Amendment retaliation or violation of his Fourteenth Amendment procedural due process rights in connection with disciplinary charges.**

*Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts."  *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).  To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

### A.   Fourteenth Amendment

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.   A Fourteenth Amendment due process claim can be either procedural or substantive.  While procedural due process prohibits deprivations of life, liberty or property without constitutionally adequate procedures, substantive due process protects these substantive rights "no matter the process employed by the State."   *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017).

In the prison setting, liberty interests protected by due process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  However, *Sandin* does not apply to pretrial detainees, and therefore, a pretrial detainee need not prove that the conditions under which he was confined exposed him to atypical and significant hardships in order to demonstrate a liberty interest requiring procedural due process protection.  *Benjamin*, 264 F.3d at 188–89.

1.     Procedural Due Process Violation

A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

On a procedural due process claim, the court evaluates only the procedures used for the hearing officer to reach his decision.  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017).  The level of procedural protection required depends on the purpose of the hearing.  *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).

For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter.

*Hewitt v. Helms*, 459 U.S. 460, 476 (1983).   In *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons.

By contrast, for a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense.   *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974).

      a.    2017 SRG Designation[3]

Plaintiff's amended allegations state that after he arrived at BCC in May 2017 having been violated for his parole due to his gang-affiliated Facebook posts, he was confined as an SRG member, although he had not violated any facility rule.  [ECF No. 34 ¶ 14].

Plaintiff's allegations may be construed to assert that he was classified or designated as a SRG member without due process.[4]   However, the Court takes

_____

[3] Plaintiff's few allegations concerning his 2016 SRG designation are vague and do not raise any suggestion of a Fourteenth Amendment due process claim in connection with his classification.  *See* [ECF No. 34 ¶ 11].

[4] In its prior Initial Review Order, the Court concluded that Plaintiff's complaint and exhibits reflected that he had not sustained a plausible Fourteenth Amendment procedural due process violation arising from his SRG disciplinary

notice of Plaintiff's prior amended complaint and exhibits, which indicated that Plaintiff had a hearing conducted by Disciplinary Hearing Officer Eberle, that he pleaded guilty to the SRG offense, and that Plaintiff received the notice and hearing procedures under Administrative Directives 6.14 and 9.5 prior to his SRG designation.  *See* [ECF No. 23 at 4-5, 14]; [ECF No. 17 at 24-25, 32]; [ECF No. 1 at 29-30].

The instant complaint alleges no facts to raise a procedural due process violation based on his 2017 SRG designation.  Accordingly, the Court concludes that Plaintiff's allegations concerning his 2017 SRG designation must be dismissed as not plausible.

### b.    2018 SRG Designation

Plaintiff alleges that in 2018, he was placed in segregation because he had not finished his SRG Program from his last incarceration and was transferred to SRG Phase 3 at Corrigan; and that Defendants Papoosha, Santiago, Corcella Maiga, and Maldonado violated his Fourteenth Amendment rights by "forcing" him into the SRG program.  [ECF 34 ¶¶ 17-20, 48].  These allegations suggest that Plaintiff received no notice, opportunity to present his views, or hearing prior to being re-designated as an SRG member, which raises a due process claim under the standards of either *Hewitt* or *Wolff.*

---

violation.    [ECF No. 23 at 13-14] (citing *Trimmier v. Cook*, No. 3:20-cv-00396 (KAD), 2020 WL 5231300, at *3 (D. Conn. Sept. 2, 2020) ("because he pled guilty to the SRG disciplinary charge, Trimmier cannot state a plausible 14[th] Amendment

However, Plaintiff cannot establish a claim under Section 1983 for damages against a defendant without alleging facts indicating their direct personal involvement in Plaintiff's SRG designation.  *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (a defendant's personal involvement in an alleged constitutional violation is a prerequisite to hold a defendant liable for an award of damages under section 1983); *Woolard v. Santiago*, No. 3:19-cv-01256 (VLB), 2020 WL 2079533, at *9 (D. Conn. Apr. 30, 2020) (finding conclusory allegations insufficient to establish supervisory liability for First and Fourteenth Amendment violations).  Plaintiff alleges that Maldonado denied his appeals and that Maiga was responsible for inmate placement based on classification.  [ECF No. 34 ¶¶ 6, 23].  The Court construes the complaint most favorably to allege procedural due process violations against Santiago, Papoosha, Maldonado and Maiga, who all had plausible personal involvement in his 2018 SRG designation/placement decision.[5]  Accordingly, the Court will permit Plaintiff's procedural due process claim based on his 2018 SRG designation and placement to proceed beyond initial review against Santiago, Papoosha, Maldonado, and Maiga in their individual capacities for further development.

Plaintiff also alleges that Warden Corcella was at the relevant time responsible for the welfare of all inmates at the facility.  [ECF No. ¶¶ 4-5].

procedural due process claim")).

[5] The Court takes judicial notice of Administrative Directive 6.14, which indicates that the Director of Security or his designee are responsible for the

However, the instant amended complaint includes no factual allegations suggesting Defendant Corcella had any direct personal involvement with Plaintiff's 2018 SRG designation/placement.   Accordingly, the Court will not permit Plaintiff's this procedural due process claim to proceed against Corcella.

      c.      SRG Placement Review

      Plaintiff also alleges that Papoosha, Santiago, Corcella, Maiga, and Maldonado never provided him with a 90-day review of his placement to determine whether he still presented a security risk after his readmission in 2018. [ECF No. 34 ¶¶ 23, 49]; [ECF No. 1 ¶¶ 24, 25, 27 (inmate request and grievances concerning lack of review since October 2018)].

      Due process requires that prison officials engage in periodic review of administrative confinement, but it does not require that an inmate receive a hearing, be present, or provide statements for these periodic reviews.  *Proctor*, 846 F.3d at 609-12 (quoting *Hewitt*, 459 U.S. at 476).  In *Proctor,* the Second Circuit directed that a periodic review must provide a meaningful evaluation that considers recent conduct in determining whether valid institutional safety reasons justify continued segregation.  *Id.* at 610-11.  Prison officials cannot merely "go through the motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined in [administrative segregation] no matter what the evidence shows."  *Id.* at 610.

---

redesignation of an inmate as an SRG member.  A.D. 6.14 (19).

Such reviews are needed to ensure that segregated confinement is not pretextual. *Hewitt*, 459 U.S. at 477 n.9.

Plaintiff has sufficiently raised a procedural due process violation on the basis that he received no review of his placement during confinement in the SRG program upon or after his readmission in October 2018. The Court takes judicial notice of publicly-available Administrative Directive 6.14, which provides that the Director of Security (or designee) "shall review any inmates designation as a Security Risk Group Member as new information arises, or at least every six (6) months, to determine whether the inmate should remain on this status[;]" and "[t]he Director of Security or designee shall notify the Director of Offender Classification and Population Management, the appropriate District and Unit Administrator, the Facility Intelligence Coordinator, Classification Counselor Supervisor and the inmate of any changes in the inmate's designated status." A.D. 6.14(9).

Thus, Santiago, Papoosha, and Maiga have plausible involvement in the Fourteenth Amendment violation based on failure to review Plaintiff's placement. In addition, as previously discussed, Plaintiff alleges that Maldonado denied his appeals; and as previously discussed, his exhibits show that he complained about his allegedly illegal SRG placement as punitive and without review to Warden Corcella and Maldonado. *See* [ECF No. 34 ¶ 23]; [ECF No. 1 ¶¶ 23, 27].

15

For purposes of initial review, the Court will permit Plaintiff's Fourteenth Amendment due process claim for failure to provide periodic review to proceed against Santiago, Papoosha, Corcella, Maldonado and Maiga, who were plausibly involved with any Fourteenth Amendment violation based on failure to review Plaintiff's SRG placement.

### 2.   Substantive Due Process

"A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether ... by deliberate indifference to conditions of confinement, or otherwise." *Darnell*, 849 F.3d at 35.   A pretrial detainee can state a substantive due process claim by showing that the defendants were deliberately indifferent to the conditions of his confinement or he can show that the conditions are punitive. *Id.* at 34 n.12.

Plaintiff alleges that Coordinator of the SRG Program Papoosha, DOC Director of Security Santiago, Corrigan Warden Corcella, DOC Director of Classification and Population Management Maiga and District Administrator Maldonado violated his Fourteenth Amendment due process rights by subjecting him to confinement in the SRG program as a pretrial detainee.  [ECF No. 34 ¶ 48].

### a.   Punitive

To establish a claim that conditions are punitive, a pretrial detainee must show that a condition was "imposed for the purpose of punishment," either directly with proof of such intent or indirectly by showing that the condition is not

reasonably related to a legitimate governmental purpose, such as institutional security. *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017).

In *Almighty Supreme Born Allah*, the Second Circuit determined that prison officials violated substantive due process when they placed a pretrial detainee in administrative segregation "solely on the basis of his prior assignment to (and failure to complete) the Administrative Segregation program during a prior term of incarceration" and when prison officials "adhered reflexively to a practice that did not allow for individualized consideration of [the plaintiff's] circumstances and that required him to be placed in Administrative Segregation regardless of his actual threat, if any, to institutional security." *Id.* at 57.

The Second Circuit concluded further that the conditions of administrative segregation—including limitations of one 15–minute phone call, one 30–minute, non-contact visit with an immediate family member per week, five pieces of mail in the cell, and no television—were not reasonably related to legitimate governmental objectives. *Id.* at 58. The Second Circuit observed that the harsh conditions (including solitary confinement for 23 hours per day for seven months, showering in leg irons, and having no access to programming or counseling) could plausibly relate to security concerns but were so excessively harsh as to be punitive. *Id.*

Plaintiff alleges that in 2018, he was placed in the SRG Program as a pretrial detainee at a supermax facility in Phase 3 because he had not completed

his prior SRG program from his 2017 conviction.  [ECF No. 34 ¶ 17].  Thus, his allegations suggest that his 2018 SRG placement lacked any individualized consideration of Plaintiff's security risk and was punitive as "arbitrary and not based on current legitimate safety or security concerns…."  *See Trimmier*, 2020 WL 5231300, at *6; [ECF No. 34 ¶ 15].

In addition, at this initial stage, the Court cannot determine whether the alleged restrictive conditions of the Corrigan Phase 3 Program described in the instant amended complaint were reasonably related to a safety or security concern of DOC or were arbitrary and therefore in violation of substantive due process.  *See Trimmier*, 2020 WL 5231300, at *5 (noting plaintiff's placement in SRG program and restrictive conditions may be legitimately related to security and safety concerns due to SRG guilty plea but permitting Fourteenth Amendment claim to proceed beyond initial review) (citing *Benjamin,* 264 F.3d at 183, 188 (explaining that an administrative confinement status, although characterized as non-punitive or as having been imposed due to safety/security concerns, may involve punishment)).

Thus, Plaintiff's allegations raise plausible claims that his substantive due process rights were violated by his 2018 SRG classification/placement and/or punitive conditions.   Plaintiff's amended complaint may be construed most broadly to suggest that Maiga, Papoosha, and Santiago were involved with Plaintiff's SRG classification and allegedly punitive confinement in the SRG

18

Program at Corrigan.[6]   [ECF No. 34 ¶¶ 4-6, 53].  Accordingly, the Court will permit Plaintiff's claims that his SRG placement and conditions violated the Fourteenth Amendment as punitive to proceed against Maiga, Santiago, and Papoosha.

Plaintiff has submitted exhibits showing he complained to Corcella and Maldonado about his punitive placement in the SRG Program.   [ECF No. 1 at 21-23].   Thus, Defendants Corcella and Maldonado also plausibly have personal involvement with the SRG Phase 3 conditions and were on notice that Plaintiff was potentially subjected to arbitrarily punitive conditions in Corrigan's SRG Phase 3.   At this initial stage, the Court will also permit Plaintiff's Fourteenth Amendment substantive due process claims to proceed against Corcella and Maldonado for further development.

b.    Deliberate Indifference

To state a claim for deliberate indifference under either the Eighth or Fourteenth Amendment, Plaintiff must satisfy an objective element by showing the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which include the risk of serious damage to

---

[6] Plaintiff's new amended complaint only provides allegations about the harsh or allegedly punitive conditions of confinement in the SRG Program at Corrigan. Moreover, Plaintiff has not alleged facts reflecting that his 2017 SRG designation was arbitrary or reflexive as it was instead allegedly based the consideration of alleged gang activity on his Facebook page.  *See id.* at ¶ 13; [ECF No. 23 at 14]; *Wilson v. Santiago*, No. 3:19-cv-01807 (JAM), 2020 WL 5947322, at *4 (D. Conn. Oct. 7, 2020) (no substantive due process violation where pretrial detainee was SRG designated after individualized consideration of social media postings that suggested gang affiliation).

physical and mental soundness." *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Conditions are also considered in combination where one combines with another to affect an identifiable human need. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); see also *Darnell*, 849 F.3d at 32 ("the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another"). Under the second element for a Fourteenth Amendment claim, "the *mens rea* prong, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.*

Although he has alleged harsh conditions of confinement at the Corrigan SRG Phase 3 Program [ECF No. 34 ¶¶ 20, 25-40], the SRG Program limitations on Plaintiff's telephone use, visits from friends and family, eligibility for parole, access to educational and vocational services, showers, and his confinement in his cell for 23 hours does not suggest that Plaintiff was deprived of a life

necessity, such as food, clothing, shelter, medical care or safety. *See Doyle v. Santiago*, No. 3:19-cv-00901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) ("Although the conditions described [in phases 2 and 3 of the SRG Program] may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional."); *Pagan v. Dougherty*, No. 3:18-cv-01668 (VLB), 2019 WL 2616975 (D. Conn. June 26, 2019) (allegations that during confinement in SRG Program prisoner was subjected to limitations on telephone use, visits from friends and family, eligibility for parole, access to educational and vocational services, and showers and was confined in his cell for 23 hours per day did not support a objective component of Eighth Amendment claim for inhumane conditions of confinement) (citing cases).

Plaintiff also asserts that his SRG confinement in general subjects him to "psychological, emotional, physical, anguish, distress and pain" because it is "unlimited and indefinite." [ECF No. 34 ¶ 19]. However, Plaintiff has not alleged specific facts to show that he suffered from any objectively serious physical or mental health condition requiring medical attention; that any defendant was aware of his mental distress conditions; or that he has sustained a deprivation of mental health services. Plaintiff cannot premise a claim of deliberate indifference on a wholly conclusory allegation. *Iqbal*, 556 U.S. at 678; *see also Hemingway v. Whidden*, No. 3:19-cv-01457 (VAB), 2020 WL 5820596, at *8 (D. Conn. Sept. 30,

2020) (dismissing claim where no facts indicated plaintiff alerted defendants about conditions.)

However, Plaintiff alleges that he was forced to live with other inmates of rival affiliation, although other inmates have died due to conflicts between gang members in the SRG Program.  [ECF No. 34 ¶ 40].  Construed most broadly, Plaintiff's allegation raises an inference that Defendants Papoosha, Santiago, Corcella, Maiga and Maldonado acted with indifference to his safety by "forcing" him into the SRG Program, although they plausibly knew that inmates lives are endangered due to conflicts between rival gang members.

Accordingly, the Plaintiff's Fourteenth Amendment claim based on defendants' indifference to his safety due to forcing him to live with gang members of rival affiliation will be permitted to proceed for further development and without prejudice to a motion to dismiss.

**B.    First Amendment Free Exercise Clause, RLUIPA, RFRA**

Plaintiff alleges that Papoosha, Santiago, Maldonado, Maiga and Corcella violated his right to free exercise of religion under the First Amendment and his rights under RFRA and RLUIPA.  [ECF No. 34 ¶¶ 45-46].

The Free Exercise Clause requires that government officials respect, and avoid interference with, the religious beliefs and practices of the people.  *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  In *Salahuddin v. Goord*, the Second Circuit held that, to state a plausible free exercise claim, "[t]he prisoner must show at the

threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."   467 F.3d 263, 274–75 (2d Cir. 2006).   "A substantial burden exists where the [government] 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 177 (D. Conn. 2009) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).   The Court should consider "whether [the prisoner] sincerely holds a particular belief and whether the belief is religious in nature" without "evaluat[ing] the objective reasonableness of the prisoner's belief."  *Ford v. McGinnis*, 352 F.3d 582, 590 (2d Cir. 2003) (internal quotation omitted).  In *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014), the Second Circuit suggested that the "substantial burden test" may no longer be viable in light of the United States Supreme Court decision in *Employment Division v. Smith*, 494 U.S. 872 (1990).  It remains unresolved in this Circuit whether a prisoner must show that the disputed conduct substantially burdened his sincerely held religious beliefs, and district courts within this circuit continue to apply the "substantial burden test" when addressing free exercise claims.  *Caves v. Payne*, No. 3:20-cv-00015 (KAD), 2020 WL 1676916, at *7 (D. Conn. Apr. 6, 2020) (citing cases and applying "substantial burden test" to inmate's free exercise claim).

RLUIPA bars the government from imposing a substantial burden on a prisoner's religious exercise unless the challenged conduct or regulation "further[s] a compelling governmental interest and [is] the least restrictive means

of furthering that interest."  *Holland*, 758 F.3d at 224; *see also* 42 U.S.C. § 2000cc–1(a).  If a plaintiff makes a showing of a substantial burden, the defendant must then show that the practice (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.  42 U.S.C. § 2000cc–1(a).

Plaintiff's amended allegations indicate that he is a practicing Catholic and that he is unable to attend Catholic Mass in the SRG Program.  [ECF No. 34 ¶ 38].  For initial pleading purposes, the Court concludes that Plaintiff's allegations are sufficient to suggest that Defendants' conduct substantially burdened his religious practice.  Because Defendants Papoosha, Santiago, Maiga, Corcella, and Maldonado are all plausibly aware of and involved with the SRG inmates' access to religious services, the Court will permit Plaintiff's First Amendment Free Exercise and RLUIPA claims to proceed for further development.

Plaintiff cannot proceed against the state employee defendants under RFRA, which has been held to be unconstitutional as applied to States.  *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997).  It applies only to the federal government and its officers.  *Sossamon v. Texas*, 563 U.S. 277, 281 (2011).  Accordingly, the RFRA claims must be dismissed as not plausible.

C.    Official Capacity Claims

Plaintiff has sued the Defendants in their official capacities.  To the extent that Plaintiff seeks monetary relief from Defendants in their official capacities,

this request is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

However, Plaintiff also seeks a declaratory judgment and injunctive relief. [ECF No. 34 ¶¶ 55, 56].  Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future.  *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).  In determining whether *Ex parte Young* applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

To the extent Plaintiff requests a declaration that the Defendants violated his federal constitutional rights in the past, his request for a declaratory judgment is barred by the Eleventh Amendment.  *See Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have

refused to extend the reasoning of *Young* ... to claims for retrospective relief")
(citations omitted).  Moreover, to the extent Plaintiff's claims may be construed as
alleging any ongoing constitutional violation, Plaintiff's request for declaratory
judgment that Defendants are violating his constitutional rights is unnecessary
because the Court would have to determine that his constitutional rights are
being violated if he were to prevail on his claims.  Thus, the request for a
declaratory judgment will be dismissed.  *See Kuhns v. Ledger,* 202 F. Supp. 3d
433, 443 (S.D.N.Y. 2016) (noting dismissal of declaratory judgment action is
warranted where the declaratory relief plaintiff seeks is duplicative of his other
causes of action).

Plaintiff also requests an injunctive order to allow SRG inmates to
participate in religious services and programing, movements, privileges, rules
and exercises afforded to the general population.  As this request could present
relief to an ongoing Fourteenth Amendment substantive due process violation
and/or First Amendment Free Exercise or RLUIPA violation, the Court will permit
this injunctive relief request to proceed beyond initial review.

D.     State Law Claims[7]

This Court can exercise supplemental jurisdiction over a state law claim if:

---

[7] To the extent Plaintiff seeks prospective relief against Defendants in their
official capacities for violations of state law, those claims are barred by the
Eleventh Amendment under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.
89, 106 (1984).  *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020).

(1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Because Plaintiff asserts state law claims that derive from the same factual predicate as his plausible First and Fourteenth Amendment claims, the Court may exercise supplemental jurisdiction over Plaintiff's plausible state law claims that do not raise a novel and complex issue of state law. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raised a novel or complex issue of State Law....").

1.    **Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must allege that (1) the defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' conduct was the cause of plaintiff's distress; and (4) the resulting emotional distress sustained by plaintiff was severe. *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210

27

(2000).   The Connecticut Supreme Court has defined extreme and outrageous conduct as that which "exceeds all bounds usually tolerated by decent society." *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 443 (2003) (internal citation omitted).

Plaintiff asserts that Defendants have subjected him to intentional infliction of emotional distress and that he suffers from anxiety and depression as a result. [ECF No. 34 ¶ 51].   Construed most liberally, Plaintiff's allegations that he was subjected to arbitrary punitive conditions, placed in the SRG Program without due process, and sustained substantial burdens on his religious practice of Catholicism are sufficient to raise plausible claims of intentional infliction of emotional distress against Papoosha, Santiago, Maiga, Corcella, and Maldonado.

2.     Negligence

Plaintiff alleges that Defendants should be liable for negligence.  [ECF No. 34 ¶ 45].   However, any negligence claims against defendants in their individual capacities are barred by Connecticut General Statute § 4–165, which provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."   "[W]anton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."   *Martin v. Brady*, 261 Conn. 372, 379 (2002) (internal quotation marks and citation omitted).   Thus, Plaintiff cannot hold the

defendants, who are state employees, "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003).   Accordingly, the negligence claims are dismissed as not plausible.

## IV. ORDERS

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's Fourteenth Amendment procedural due process claims based on the 2018 SRG designation/placement decision against Santiago, Papoosha, Maldonado and Maiga in their individual capacities; his Fourteenth Amendment procedural due process claims against Santiago, Papoosha, Corcella, Maiga, and Maldonado based on the lack of periodic review for his SRG placement/classification in their individual capacities; his Fourteenth Amendment substantive due process claims based on his punitive confinement at the Corrigan SRG Program against Santiago, Papoosha, Corcella, Maiga and Maldonado in their individual capacities; his Fourteenth Amendment indifference to safety claims based on his confinement in the Corrigan SRG Program against Defendants Papoosha, Santiago, Corcella, Maiga and Maldonado in their individual capacities; his First Amendment Free Exercise Clause and RLUIPA claims against Santiago, Papoosha, Corcella, Maiga, and Maldonado in their official and individual capacities; and his state law claim of intentional infliction

of emotional distress against Santiago, Papoosha, Corcella, Maiga, and Maldonado in their individual capacities.

All other claims are DISMISSED. All of the Defendants have been served in their individual capacities.

As Plaintiff has been afforded an opportunity to correct the deficiencies identified in the prior initial review order, the Court will not permit Plaintiff to file another amended complaint without seeking leave from this court in a motion to amend under Federal Rule of Civil Procedure 15(a).

(2) The clerk shall prepare a summons form and send an official capacity service packet, including the amended complaint (ECF No. 34) and this Initial Review Order, on the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on Santiago, Papoosha, Corcella, Maiga, and Maldonado in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106 within twenty-one (21) days from the date of this order and file a return of service within thirty (30) days from the date of this order.

(3) The clerk shall send a courtesy copy of the amended complaint [ECF No. 34] and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order.  Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(6) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.   He should also notify the defendants or defense counsel of his new address.

(8) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery

31

requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on defendants' counsel by regular mail.


_____*/s/*_____
Vanessa L. Bryant
United States District Judge


**SO ORDERED** at Hartford, Connecticut this 25th day of May, 2021.